UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DENISE ROSE, | CASE NO. 1:08CV54 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Denise Rose ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). ECF Dkt. #1. Plaintiff asserts that the Administrate Law Judge ("ALJ") erred in: (1) failing to give appropriate weight to Plaintiff's treating physicians; and (2) failing to give sufficient consideration to Plaintiff's use of home oxygen and a cane and her inability to work full-time. ECF Dkt. #16. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS this case for further articulation by the ALJ:

**I.  PROCEDURAL AND FACTUAL HISTORY**

On March 26, 2003, Plaintiff filed an application for SSI and DIB, alleging disability resulting from hypertensive cardiovascular disease/hypertension, a lumbar spine impairment, and bronchial asthma. Tr. at 71-75, 354-57. Her application was denied initially and on reconsideration. *Id*. at 34-41, 358-66. On April 2, 2004, Plaintiff filed a request for a hearing before an ALJ. *Id*. at 42. On May 11, 2006,an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. *Id*. at 395-434. The ALJ heard testimony from: Plaintiff; Connie Guillory, a vocational expert; and Dr. Arvin Klein, a medical expert. *Id*. On August 21, 2006, the ALJ issued a Notice of Decision - Unfavorable. *Id*. at 22-31. The Appeals Council denied Plaintiff's request for review.

*Id*. at 5-8.

On January 1, 2008, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On July 1, 2008, Plaintiff filed a brief on the merits. ECF Dkt. #16. On September 2, 2008, Defendant filed a brief on the merits. ECF Dkt. #18. Plaintiff filed no reply.

## II.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In her decision, the ALJ first concluded that Plaintiff meets the insured status requirements through December 31, 2007. Tr. at 26.

The ALJ then determined that Plaintiff has engaged in substantial gainful activity "since November 2, 2002, the alleged onset date." Tr. at 26. The ALJ reasoned that Plaintiff's earnings records showed the she earned $10,715.27 in 2003 and $10,727.93 in 2004. *Id*.

The ALJ went on to find that Plaintiff had the following severe impairments: degenerative joint disease of the right knee, and asthma. Tr. at 26. The ALJ reasoned that the medical expert, Dr. Klein, conducted a meticulous review of the record and opined that Plaintiff suffered only from degenerative joint disease of the right knee, and asthma, under control. Tr. at 27.

The ALJ specifically noted that Plaintiff had a documented history of asthma and she noted pulmonary function testing ("PFT") in February 2006, which showed moderate air-way obstruction with moderate reduction of FEV1 and FEV3, but there was significant improvement (25%) with bronchodilators. Tr. at 27. The ALJ noted that Donald Epstein, M.D.'s progress notes indicate that Plaintiff experienced dramatic improvement with supplemental oxygen and with medications, including Advair and VoSpire. *Id*. Dr. Epstein stated that Plaintiff's asthma had stabilized. *Id*. The ALJ noted, however, that on December 29, 2004, Plaintiff's asthma exacerbated and she was briefly treated in the emergency room before being discharged in a stable condition. *Id*. at 27. Plaintiff also experienced asthma exacerbations on February 9, 2003 and February 10, 2003. *Id*.

Turning to degenerative joint disease of the right knee, the ALJ observed that progress notes from treating physician Nana A. Kobaivanova, M.D. showed clinical signs of crepitus but no other significantly abnormal findings regarding complaints of knee pain. Tr. at 27. The ALJ noted that an MRI of Plaintiff's right knee showed a radial tear at the root of the medial meniscus. *Id*.

Turning to Plaintiff's claim regarding hypertension, the ALJ noted that Plaintiff's condition was under good control and there was no end organ disease. Tr. at 27. The ALJ noted that exams showed a normal sinus rhythm, no evidence of cardiac enlargement, congestive heart failure, or angina. *Id*. Accordingly, the ALJ found that Plaintiff's hypertension was not a severe impairment. *Id*.

The ALJ also found that Plaintiff's back pain did not constitute a severe impairment because F. Krause, M.D., who performed a consultative examination in June of 2003 did not find objective evidence to establish a back impairment. Tr. at 27. Further, an x-ray taken on June 2, 2003 was unremarkable. *Id.*

Lastly in regard to severe impairments, the ALJ addressed Plaintiff's testimony claiming a dysfunction due to problems with her right wrist. Tr. at 27. The ALJ noted that Plaintiff did not raise that allegation in the initial determination or reconsideration levels for review, and there was no mention of any complaints related to her wrist in the record. *Id*. The ALJ held the record open after the administrative hearing in order to allow Plaintiff to submit supporting documentation. *Id*. Following the hearing, Plaintiff submitted progress notes from a physical therapist, indicating that plaintiff complained of an inability to use her right wrist due to pain on May 29, 2006. *Id.* The physical therapist designed a six-week treatment plan, with treatment to be administered once a week. *Id*.

Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. Tr. at 27. The ALJ reasoned that no physician has opined that claimant's condition meets or equals a listing and that the medical expert and state agency program physicians opined that her conditions do not meet or equal a listing. *Id*.

The ALJ then addressed Plaintiff's residual functional capacity ("RFC"). Tr. at 27-30. The ALJ concluded that Plaintiff retained the RFC to: "lift or carry 10 pounds frequently and 20 pounds occasionally; sit for 6 hours out of an 8-hour work-day; stand for 1 hours [sic] out of an 8-hour workday; work [sic] for 1 hours [sic] out of an 8-hour workday; avoid climbing ladders and scaffolds, kneeling, crawling, excessive dust, fumes, temperature extremes, heights of moving machinery [sic]." Tr. at 27-28. The Court believes the reference to work for one hour a day is a

typographical error and the term 'work' should be interpreted as 'walk.'

The ALJ noted that Plaintiff's impairments have resulted in shortness of breath, fatigue, wheezing, coughing, weakness, and pain. Tr. at 28. The ALJ concluded that Plaintiff's conditions could reasonably be expected to produce these alleged symptoms, but also that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. *Id*. The ALJ reasoned that Plaintiff's physical exams were abnormal only for crepitus on flexion of the knees, but there were no consistent signs of shortness of breath, chest tightness, wheezing, coughing, or rhonci. *Id*. Specifically, the ALJ noted that x-rays from February of 2003, June of 2003, November of 2004, and December of 2004 were normal. *Id*. Further, PFT from June of 2003 showed moderate restrictive ventilatory defect with minimal obstructive defect unchanged after bronchodilators. *Id*. PFT testing from May of 2004 showed mild obstructive disease process. *Id*. PFT from February of 2006 showed moderate air-way obstruction with moderate reduction of FEV1 and FEV3, but significant improvement (25%) with bronchodilators. *Id*.

The ALJ observed that Plaintiff's course of treatment since her alleged disability onset date has generally reflected a conservative approach. Tr. at 29. The ALJ however, did not cite any examples or offer a further explanation underlying this conclusion. *Id*.

The ALJ next concluded that Plaintiff's activities of daily living demonstrate that she is able to do sedentary exertional work, as outlined above, because she does light household cleaning and chores, prepares simple meals, drives a car and uses public transportation, shops, sews, crochets, and attends church services once a week. Tr. at 29.

The ALJ stated that the record does not show that claimant requires any special accommodations to relieve the pain or other symptoms. Tr. at 29. The ALJ further stated that, despite Plaintiff's back pain and bilateral knee pain, she does not need any assistive devices to ambulate, and she has a normal gait. *Id*. The ALJ noted that, in contrast to Plaintiff's allegations of disabling fatigue and weakness, she does not exhibit any significant atrophy, loss of strength, or difficulty moving that are indicative of severe pain. *Id*. Further, the record does not indicate that Plaintiff's medications are ineffective or cause debilitating side-effects. *Id*. The ALJ reasoned that Plaintiff's asthma medications have effectively controlled her condition and progress notes indicate

that her asthma is stable. *Id*. The ALJ observed that Plaintiff's asthma significantly improved with supplemental oxygen to the point that she can walk around without difficulty. *Id*. In addition, the ALJ noted that Plaintiff has continued to smoke despite her pulmonary condition and medical advice. *Id*. Based on these observations, the ALJ concluded that Plaintiff's allegations were not credible. *Id*.

Next, the ALJ addressed the opinions of the medical experts of record. The ALJ stated that she gave great weight to Dr. Klein's opinion that Plaintiff could: "lift or carry 10 pounds frequently and 20 pounds occasionally; sit for 6 hours out of an 8-hour work-day; stand for 1 hours [sic] out of an 8-hour workday; [walk] for 1 hours [sic] out of an 8-hour workday; avoid climbing ladders and scaffolds, kneeling, crawling, excessive dust, fumes, temperature extremes, heights of moving machinery [sic]." Tr. at 29.

The ALJ afforded little weight to Dr. Kobaivanova's opinion of June 10, 2004 where she opined that Plaintiff was limited to standing or walking for less than 1 hour in an eight- hour day and never lifting or carrying even less than five pounds. Tr. at 29. The ALJ noted that Dr. Kobaivanova opined that Plaintiff experienced pain severe enough to constantly interfere with her attention and concentration. *Id*. The ALJ concluded that Dr. Kobaivanova's opinion was not substantiated by objective clinical findings in the record regarding her pulmonary impairment. *Id*. at 30. The ALJ reasoned that, while Dr. Kobaivanova noted clinical findings of shortness of breath, chest tightness, wheezing, and rhonci on the "Pulmonary Impairment Questionnaire," these findings were not indicated on a consistent basis in the physical exams documented in the progress notes of East Cleveland primary Care. *Id*. The ALJ also noted that Dr. Kobaivanova's June 10, 2004 opinion was inconsistent with her May 5, 2004 opinion that Plaintiff could work for 25 hours per week. *Id*. The ALJ found further inconsistencies with Dr. Epstein's observations that plaintiff's pulmonary condition "dramatically" improved with supplemental oxygen and that her asthma was stable. *Id*. The ALJ stated that the June 2003, May 2004, and February 2006 PFT's (discussed above) were also inconsistent with Dr. Kobaivanova's opinion. *Id*.

The ALJ then turned to the "Multiple Impairment Questionnaire" that Dr. Kobaivanova completed on April 13, 2006. Tr. at 30. The ALJ noted that Dr. Kobaivanova opined that Plaintiff

-5-

was significantly limited from performing the work required for an eight-hour workday by the following limitations: sitting limited to two hours in an eight-hour day; standing or walking less than one hour in an eight-hour day; the need to alternately sit or stand; lifting limited to 10 pounds occasionally; and carrying limited to five pounds occasionally. *Id.* Dr. Kobaivanova further opined that Plaintiff's pain was severe enough to constantly interfere with attention and concentration. *Id.* The ALJ concluded that Dr. Kobaivanova's opinion of Plaintiff's functional limitations is not substantiated by objective clinical findings or diagnostic studies in the record regarding the diagnoses upon which she premised disability: diabetes mellitus II, chronic obstructive pulmonary disease, asthma, hypertension, degenerative joint disease, and obesity. *Id.* The ALJ noted that the sitting, standing, and walking limits that Dr. Kobaivanova endorsed were not supported by the record because Plaintiff does not need assistive devices to ambulate and has a normal gait. *Id.* Lastly, the ALJ discounted Dr. Kobaivanova's opinion that Plaintiff is "not a candidate for employment" because it was a conclusory opinion. *Id.*

Based on Plaintiff's RFC, the ALJ determined that Plaintiff could return to her past work as a telemarketer. Tr. at 31. The ALJ relied on the vocational expert's opinion that a hypothetical person with Plaintiff's RFC could perform the job requirements for the telemarketer position. *Id.*

## III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§

-6-

>   404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

### A. THE ALJ'S DETERMINATIONS REGARDING THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS

Plaintiff first contends that the ALJ erred in determining the appropriate weight to afford to her treating physicians' opinions. ECF Dkt. #16 at 8.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); Wilson, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, she must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, she must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why she rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even

-8-

where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Here, Plaintiff contends that the ALJ's determination that she can perform sedentary work at a substantial level, and therefore her past relevant work, is in error. ECF Dkt. #16 at 8. Plaintiff reasons that substantial evidence, in the form of objective medical evidence and the opinions of her treating physicians, establishes that she can not engage in any work activity. *Id.* That argument is not well-taken because the Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See Walters*, 127 F.3d at 528.

Plaintiff further argues that the ALJ failed to adequately evaluate her use of oxygen and a cane and her inability to perform full time work. ECF Dkt. #16 at 8-9. However, under a second heading, Plaintiff again argues that the ALJ did not properly consider these factors in assessing her RFC. *See* ECF Dkt. #16 at12-13. These duplicative arguments are somewhat confusing from an organization standpoint. Therefore, the Court will first focus on whether the ALJ properly evaluated the medical opinions of Plaintiff's treating physicians. Then the Court will address the additional impairments that Plaintiff alleges.

First, as Defendant notes, Plaintiff does not challenge the ALJ's finding that she has engaged in substantial gainful activity during 2003 and 2004. *See* ECF Dkt. #18 at 7-8. Accordingly, that argument is waived, and the only remaining issue is whether Plaintiff was disabled following 2004. *See Young v. Secretary of Health & Human Services*, 925 F.2d 146, 149 (6th Cir. 1990).

Since the relevant time frame is the period following 2004 and Dr. Kobaivanova authored an opinion on April 13, 2006, the Court finds it unnecessary to discuss Dr. Kobaivanova's June 10, 2004 opinion and will focus on the opinion she authored in 2006. On April 13, 2006, Dr. Kobaivanova completed a "Multiple Impairment Questionnaire" where she opined that Plaintiff suffered from multiple impairments that imposed exertional limitations. Tr. at 343-50. Dr. Kobaivanova set forth diagnoses of diabetes mellitus II, COPD, asthma, hypertension, degenerative joint disease, and obesity. *Id.* at 343. The ALJ accurately noted that Dr. Kobaivanova's opinion emphasized Plaintiff's bilateral knee pain. *See* Tr. at 30, 344-45. The ALJ then concluded that her

RFC accounts for the pain that Dr. Kobaivanova described because it limits standing to one hour in an eight-hour workday and walking to one hour in an eight-hour workday, and it excludes climbing ladders or scaffolds, kneeling, and crawling. Tr. at 27-28. While it may be true that the ALJ's RFC appropriately accounts for Plaintiff's functional impairments, the ALJ has failed to adequately explain why she rejected Dr. Kobaivanova's opinion regarding exertional limitations – specifically, that Plaintiff could sit for only two hours in an eight-hour workday and stand or walk for less than one hour in an eight-hour workday. *See* Tr. at 345. The ALJ did not sufficiently address these opinions. The ALJ summarily concluded that Dr. Kobaivanova's opinions of Plaintiff's functional limits were "not substantiated by objective clinical findings or diagnostic studies in the record." Tr. at 30. Upon a review of the record, however, the Court fails to see how Dr. Kobaivanova's opinion was not supported by the record. Dr. Kobaivanova's opinions are not plainly lacking support from the record because she noted in her progress notes, which appear to be based upon clinical examinations, that Plaintiff was awaiting orthopedic intervention (March 8, 2005; Tr. at 335) and she had "severe knee arthritis" (April 26, 2005; Tr. at 334), severe pain on the left knee, causing crying and minimal ambulation (April 26, 2005; Tr. at 332), and "severe DJD" (September 8, 2005; Tr. at 329). The ALJ did not acknowledge these treatment records in regard to Dr. Kobaivanova's 2006 opinion. Therefore, it is not patently clear that Dr. Kobaivanova's opinion was inconsistent with the record or unsupported by clinical findings.

Further, Dr. Kobaivanova based her 2006 opinion on Plaintiff's impairments on the observation that Plaintiff experienced severe shortness of breath on minimal exertion. Although the ALJ discussed the pulmonary impairment questionnaire that Dr. Kobaivanova completed in 2004, the ALJ made no mention of Dr. Kobaivanova's opinion in 2006 related to Plaintiff's extreme shortness of breath and impairments resulting therefrom. *See* Tr. at 30, 262, 343.

Accordingly, further articulation by the ALJ is necessary to understand if and why Dr. Kobaivanova's opinions are not supported by clinical findings.

Plaintiff further contends that the ALJ erred in failing to evaluate the opinion of Dr. Billy Brown. ECF Dkt. #16 at 11-12. Plaintiff notes that on June 9, 2005 and October 31, 2005, Dr. Brown opined that Plaintiff was not considered to be a candidate for gainful employment. *Id.* citing

Tr. at 257, 258, 327 (note: page 257 of the transcript is a letter from Dr. Kobaivanova, not from Dr. Brown.). Plaintiff contends that the ALJ's failure to address Dr. Brown's reports requires remand. ECF Dkt. #16 at 12. The Court disagrees because Dr. Brown's reports are very scant, offer no indication of clinical testing, and offer only an opinion as to Plaintiff's employability, which is a determination reserved to the Commissioner. Accordingly, it is clear that Dr. Brown's opinion is not entitled to deference and remand is not necessary. *See Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) ("For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal.") citing *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). Regardless, since the matter is being remanded for further articulation regarding Dr. Kobaivanova's opinion, the ALJ should also address Dr. Brown's opinion for the sake of completeness. Accordingly, although the ALJ's error in regard to Dr. Brown's opinion does not require reversal, it is still a technical error that should be corrected when the case is remanded based upon another error.

### B. THE ALJ'S DETERMINATIONS REGARDING PLAINTIFF'S RFC

Plaintiff next contends that the ALJ erred in failing to account for impairments resulting from her supplemental oxygen use, her use of a cane, and her ability to work only 25 hours per week. ECF Dkrt. #16 at 12-13.

Plaintiff first asserts that the ALJ failed to account for limitations imposed by her oxygen usage. ECF Dkt. #16 at 12-13. Plaintiff, however, does not explain why her use of oxygen would impose limitations beyond those that the ALJ imposed in her RFC. Further, Defendant notes that Plaintiff does not challenge the ALJ's credibility findings and that argument is waived. *See* ECF Dkt. #18 at 8-10. The Court agrees. The Court further notes that the ALJ pointed to a medical record indicating that Plaintiff was able to "walk around with no difficulty" with the use of oxygen. Tr. 29, 251. Since a physician opined that Plaintiff could "walk around with no difficulty" while using oxygen and since Plaintiff has not identified how oxygen would erode the sedentary work

-11-

base, the Court sees no reason to reverse the ALJ's decision on that issue. Of note, Dr. Kobaivanova's 2006 multiple impairment questionnaire never indicates that Plaintiff is limited by virtue of her supplemental oxygen treatment. Dr. Kobaivanova opined only that Plaintiff's shortness of breath was debilitating and, as discussed above in Section V.A., the matter is being remanded for further articulation by the ALJ on that issue. Accordingly, the Court affirms the ALJ's RFC insofar as Plaintiff challenges it based upon her use of supplemental oxygen.

Plaintiff next points to Dr. Kobaivanova's opinion from May 4, 2004, which indicates that she should not work over 25 hours a week. ECF Dkt. #16 at 13 citing Tr. at 272. As noted above, however, the ALJ found that Plaintiff engaged in substantial gainful activity during 2004 and earned $10,727.93, and Plaintiff did not challenge that finding. The Court notes that these earnings are the highest that Plaintiff reported from 1989 through 2004. *See* Tr. at 77. Accordingly, the ALJ was not required to account for the 25 hour limitation in the RFC because Plaintiff was not disabled during 2004. *See* 20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992).

Lastly, Plaintiff asserts that the ALJ erred in failing to account for her use of a cane. This assertion is also without merit. The ALJ clearly stated that Plaintiff does not require an assistive device to ambulate and she has a normal gait. Tr. at 29. Although Plaintiff challenges this conclusion, she points to no evidence of record that would undermine the ALJ's conclusion other than her own testimony. As Defendant notes, however, the ALJ discounted Plaintiff's credibility on the issue, and Plaintiff does not challenge that finding. ECF Dkt. #18 at 9. Plaintiff has neither pointed to, nor is the Court aware of, any medical opinion stating that Plaintiff requires the use of a cane. Again, since Defendant notes that Plaintiff does not challenge the ALJ's credibility findings, that argument is waived. Accordingly, since Plaintiff does not challenge the ALJ's determination of credibility regarding her back pain and knee pain, and since Plaintiff has not pointed the Court to any evidence that would call the ALJ's opinion into question, the Court finds that the ALJ did not err by omitting a requirement for use of a cane in Plaintiff's RFC.

Accordingly, the Court finds that the ALJ did not err by failing to account for Plaintiff's impairments resulting from her supplemental oxygen use, her use of a cane, and her ability to work only 25 hours per week.

## VI. CONCLUSION

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the the instant case for further articulation regarding Dr. Kobaivanova's April 13, 2006 opinions and Dr. Billy Brown's records.

IT IS SO ORDERED.


DATE: October 3, 2008                     */s/George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE